# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JUSTIN RAY MILLER, #0030067, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 3:24-cv-00904 ) ) JUDGE CAMPBELL |
| RUTHERFORD COUNTY ADULT DETENTION CENTER, et. al. | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Justin Ray Miller, an inmate of the Rutherford County Adult Detention Center (RCADC), has filed a pro se complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. (Doc. No. 1.) The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A. Before the Court proceeds with the required PLRA screening, the Court must address the filing fee.

## I. FILING FEE

Plaintiff has filed an Application for Leave to Proceed In Forma Pauperis ("IFP Application"). (Doc. No. 2.) Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application, it appears that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his Application (Doc. No. 2) is **GRANTED**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-

1

Case 3:24-cv-00904    Document 16    Filed 03/24/25    Page 1 of 12 PageID #: 105

plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the administrator of inmate trust fund accounts at the Rutherford County Adult Detention Center to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present

place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Memorandum Opinion and Order follows Plaintiff to his new place of confinement for continued compliance.

## II. SCREENING OF THE COMPLAINT

### A. PLRA Screening Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*. The Court must accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se

pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520121 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### B. Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

### C. Alleged Facts

Plaintiff is currently a pre-trial detainee at the Rutherford County Adult Detention Center. He claims that on June 27, 2024, at about 4:30 p.m., he advised an officer who is not named in the lawsuit that the sink in his cell was broken and leaking water. Defendant Shawn Van Winkle, a Corrections Officer at the Detention Center, was advised of the leak about an hour later at 5:30 p.m. At 6:30 p.m. Plaintiff showed Van Winkle that his cell was flooding with water. Van Winkle initially advised Plaintiff to pack his belongings and prepare to move to another cell. Van Winkle also informed Plaintiff that he would turn the water off. Van Winkle also obtained some linen and cloths to block the water from flowing out of the cell, because he wanted the water to stay in Plaintiff's cell and not flood adjoining areas. At 6:40 p.m., Plaintiff slipped on the water in his cell and fell, busting his head and injuring his right elbow. He also believed that his right shoulder had

4

Case 3:24-cv-00904    Document 16    Filed 03/24/25    Page 4 of 12 PageID #: 108

been dislocated and that something had been torn in his right knee. Plaintiff advised an inmate to inform prison officials that he needed to see medical staff. (Doc. 1 at 14).

At 6:51 p.m., another officer escorted Plaintiff to the detention center's medical unit. When he arrived at the unit, run by Defendant Rudd Medical Services, Plaintiff was examined by a nurse, who cleaned Plaintiff's head, gave him some pain medications, and further informed Plaintiff that they would be in a better position to assess his condition after the swelling went down. Plaintiff asked the nurse if an X-ray or M.R.I. could be performed. She denied the request, stating that this was not an emergency. (Doc. 1 at 15-16).

On June 28, 2024, at 12:54 a.m., Plaintiff sent an emergency medical request, claiming that he was now in severe pain and his right knee was buckling from the injury. Plaintiff said he could barely walk and this was the worst pain he had ever experienced. Plaintiff was informed that an emergency sick call had been placed on his behalf. (Doc. 1 at 16-17).

On June 29, 2024, at 4:18 p.m., a nurse Thomas, who was employed by Rudd Medical Services, came to Plaintiff's cell to examine Plaintiff. The nurse noted on his piece of paper that there was significant swelling and that Plaintiff had a knot on his right knee. Plaintiff informed the nurse about his severe pain. The nurse said he would order some ice for Plaintiff to alleviate the pain but ice was never provided. Plaintiff again asked for an X-ray or an M.R.I., but the nurse replied that it would be up to the medical provider to determine whether to perform these tests. (Doc. 1 at 17-18).

Plaintiff claims that on June 30, 2024, a corrections officer not named in this complaint, passed out Over the Counter (OTC) medications to the inmates. Plaintiff was informed that Rudd Medical Services denied him OTC medications. Later that day, Plaintiff sent an emergency sick call to Rudd to request OTC medications and again mentioned his medical conditions. Plaintiff

5

indicated in his request that although Rudd has a policy that inmates can only order OTC medications once a week, this was his third request for medications. (Doc. 1 at 18-19).

On July 1, 2024, Nurse Charles Fleyn of Rudd Medical Services came to Plaintiff's cell and asked him if Neproxen, a pain reliever, would be okay for Plaintiff. Plaintiff replied in the affirmative. (Doc. 1 at 19). Later that morning, Plaintiff informed an Officer Harrel that his knee was buckling, causing him to fall and again requested medical attention. The officer relayed the request. (Doc. 1 at 20).

On July 3, 2024, at 7:00 a.m., Plaintiff sent out another medical request, indicating that his knee kept giving out, causing him to fall. A corporal responded that a request had been put in. (Doc. 1 at 20).

On July 7, 2024, Plaintiff walked a sick call request into a nurse identified only as Lisa. Plaintiff requested Tylenol for the pain and informed her that he could hardly raise his right shoulder, that the bone was practically coming out of his right elbow, and his right knee kept falling out, causing him to fall twice. Later that day, Plaintiff was again denied OTC medications. (Doc. 1 at 20-21).

Plaintiff put in yet another medical request about his knee on July 9, 2024. (Doc. 1 at 21).

On July 10, 2024, a female nurse came to Plaintiff's cell and asked him what was going on, as she had been away from the detention center for a while. Plaintiff informed her that he believed that his right shoulder was dislocated, that his right elbow was splintered, and that his right knee was buckling. He again asked for an X-Ray for his shoulder and elbow and an M.R.I. for his knee. The nurse informed him that he could probably not get the tests, unless the provider determined that it was an emergency. Plaintiff replied that "it feels like an emergency every day."

(Doc. at 21-22). Plaintiff alleges that other than a couple of times of dispensing pain medications, he has been denied any medical care for his injuries. (Doc. at 24-25).

**D. Analysis**

1. <u>The Slip and Fall Claim</u>

Plaintiff claims that Van Winkle exposed him to a dangerous situation by failing to correct the leaking water problem in his cell or to remove him in a timely manner from the cell before he slipped and fell.

When alleging that his safety was endangered due to the conditions of confinement, a prisoner can successfully bring a Section 1983 claim by showing that the prison officials acted with "deliberate indifference" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994). However, "[t]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis original); *see also Lewellen v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 34 F.3d 345, 348 (6th Cir. 1994) ("it is now firmly settled that injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest.").

Likewise, an Eighth Amendment claim of deliberate indifference must be supported by more than mere negligence. *See Harrison v. Ash,* 539 F.3d 510, 522 (6th Cir. 2008). "Negligent exposure to a risk is not sufficient to create an Eighth Amendment violation." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. at 835-36).

"Courts have regularly held that slip and fall accidents do not give rise to federal causes of action." *Mills v. C.C.A.*, No. 1:10-0015, 2010 WL 5155478, at *4 (M.D. Tenn. Dec. 14, 2010) (collecting cases), *report and recommendation adopted*, No. 1-10-0015, 2011 WL 13552 (M.D.

7

Tenn. Jan. 4, 2011), *adhered to*, No. 1-10-0015, 2011 WL 31443 (M.D. Tenn. Jan. 5, 2011). Plaintiff's claim that he slipped and fell in his prison cell as a result of a wet cell floor alleges at most that Defendant Van Winkle was negligent in failing to protect Plaintiff from this hazardous condition, and thus does not state a claim for relief under Section 1983. *Daniels v. Williams,* 474 U.S. at 332 (the Fourteenth Amendment did not afford a remedy for injuries allegedly sustained by plaintiff when, while an inmate in a city jail, he slipped on a pillow negligently left on a stairway by correctional deputy); *White v. Tyszkiewicz*, 27 F. App'x 314, 315 (6th Cir. 2001) (allegations that state prisoner slipped and fell on ice at most alleged that prison officials were negligent in their duty to protect prisoner from such hazardous conditions, and thus did not state claim under the Eighth Amendment, warranting dismissal of prisoner's Section 1983 action); *White v. Hamilton Cty. Jail*, No. 1:08-CV-53, 2011 WL 864855, at *6 (E.D. Tenn. Mar. 10, 2011) (prisoner's claim that he fell over uncovered drainage hole alleged negligence at most). The slip and fall claim and Defendant Van Winkle are dismissed from the case.

  2. The Medical Claim

As a pretrial detainee, Plaintiff has a right to be free from deliberate indifference to serious medical needs that arises under the Fourteenth Amendment. *See Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). To state a claim for a violation of this right, Plaintiff must allege that: (1) he had a sufficiently serious medical need; and (2) a defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 317 (6th Cir. 2023) (internal citations and quotation marks omitted).

For purposes of initial review, the Court finds that Plaintiff's medical needs due his injured head, dislocated right shoulder, splintered right elbow, and injured right knee are sufficiently

8

serious. Moreover, the Court assumes for purposes of initial review that Defendant Rudd Medical Services is a private medical provider that operates pursuant to municipal contract and is therefore a proper defendant under Section 1983. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 904 (6th Cir. 2018) (citing *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)). Such a government contractor "cannot be held liable on a *respondeat superior* theory, but [only] for a policy or custom of that private contractor." *Id.* (internal quotation marks omitted). At this early stage, and drawing all reasonable inferences in Plaintiff's favor, he has plausibly alleged that Rudd Medical Services' decision to deny him diagnostic tests or any treatment for his injuries is a reckless decision made pursuant to a policy or custom of "prioritizing cost-savings over inmates' medical treatment." *Vick v. Core Civic*, 329 F. Supp. 3d 426, 447 (M.D. Tenn. 2018). Accordingly, a plausible claim to relief has been stated and will proceed against Rudd Medical Services.

In addition to Rudd Medical Services, the RCADC is named as a Defendant in the Complaint. The RCADC is not an entity subject to suit under Section 1983; however, that Defendant may be liberally construed for these purposes as a placeholder for Rutherford County itself. *See Carr v. Washington Cnty. TN Jail*, No. 2:23-CV-172, 2023 WL 8791750, at *2 (E.D. Tenn. Dec. 19, 2023) (in considering whether County caused any violation of plaintiff's rights, finding that although the named defendant, Washington County Jail, is not an entity subject to suit under Section 1983, "Washington County, which runs the Washington County Jail, is"); *Campbell v. Cheatham Cnty. Sheriff's Dep't*, 511 F. Supp. 3d 809, 825 n. 12 (M.D. Tenn. 2021), *aff'd*, 47 F.4th 468 (6th Cir. 2022) (finding claim against sheriff's department "subject to dismissal because sheriff's departments are not proper parties to a § 1983 suit," though claim could be pursued "directly against the County"). The Court thus treats Rutherford County as a named Defendant for purposes of initial review.

Rutherford County "cannot be held liable under 42 U.S.C. § 1983 for the acts of private or public employees providing medical treatment, unless the plaintiff can show that the conduct of the medical treaters was dictated by official policy of [the County]." *Jackson v. Siringas*, No. 12-15474, 2013 WL 3810301, at *14 (E.D. Mich. July 23, 2013), *aff'd*, No. 13-2123 (6th Cir. May 15, 2014) (citing, *e.g.*, *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996)). At this point, Plaintiff does not allege that Rutherford County has an official policy dictating the denial of medical care to inmates. In fact, jail staff appeared to respond to Plaintiff's requests for medical care and conveyed them to Rudd Medical personnel. Rutherford County Adult Detention Center is dismissed from the complaint.

### III. MOTION TO AMEND THE COMPLAINT

Plaintiff filed a motion to amend the complaint, to add additional defendants and claims, specifically a retaliation claim and perhaps other claims. (Doc. No. 6). Subsequently, he filed a Motion to Strike/Dismiss (Doc. No. 9) requesting the Court to strike Docket Number 6. In the accompanying briefing and later-filed notices (Doc. No. 10, 11, 15), Plaintiff explained that he wants to "keep the original complaint," but asks the Court to construe the Complaint as stating a claim against Rutherford County, Tennessee, in place of Defendant RCDAC. As explained above, the Court construed Plaintiff's claim against Defendant RCADC as a claim against Rutherford County itself and determined that Plaintiff has not stated a claim against either Defendant. Accordingly, Plaintiff's motion for leave to amend and motion to strike (Doc. No. 6, 9) are **DENIED AS MOOT**.

However, "[a] party may amend its pleading once as a matter of course within 21 days after serving it" and, "[i]n all other cases, ... [t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). A district court can allow an inmate to amend his complaint

even when the original complaint might be subject to dismissal under the Prison Litigation Reform Act's (PLRA) screening requirements for prisoner and *in forma pauperis* (IFP) suits. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

Plaintiff shall have thirty days from the date of this order to file an amended complaint.

## IV. MOTIONS TO ORDER M.R.I. OR AN X-RAY

Plaintiff has filed a motion to order Defendants to perform an M.R.I. or an X-Ray (Doc. No. 7) and a motion inquiring into the status of this motion. (Doc. No. 8). These motions are **DENIED WITHOUT PREJUDICE** to the Magistrate Judge addressing these motions after a referral to the Magistrate Judge and service upon Defendant Rudd Medical Services.

## V. CONCLUSION AND FURTHER PROCEEDINGS

For the reasons stated herein, Plaintiff's Slip and Fall Claim and Defendants Rutherford County Adult Correctional Center and Shawn Van Winkle are **DISMISSED**.

Plaintiff's pleadings state nonfrivolous claims against Defendant Rudd Medical Services. Accordingly, the Clerk is **INSTRUCTED** to send Plaintiff a service packet (blank summons and USM 285 form) for this Defendant. Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the date of this Order. Upon return of the completed service packet, **PROCESS SHALL ISSUE**.

Plaintiff's motion to amend the complaint and motion to strike (Doc. Nos. 6, 9) are **DENIED AS MOOT**. However, Plaintiff has thirty days from the date of this order to file an amended complaint. Plaintiff's motions for an M.R.I. or an X-Ray (Doc. Nos. 7 and 8) are **DENIED WITHOUT PREJUDICE**.

The Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons

set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE